816 F.2d 680
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LOUISVILLE CHAPTER NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION, Plaintiff- Appellee, Cross-Appellant,
v.
LORD ELECTRIC COMPANY, INC., Defendant-Appellant, Cross-Appellee.
 Nos. 86-5687, 86-5718.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1987.
 
 Before KENNEDY, RYAN and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellee/Cross-Appellant Louisville Chapter National Electrical Contractors Association ("Louisville NECA") appeals the District Court's order granting in part its motion for summary judgment, limiting the amount of recovery to $20,000.00, and dismissing the second count of its complaint. Defendant-Appellant/Cross-Appellee Lord Electric Company ("Lord") appeals the District Court's order denying its motion for summary judgment and denying its motion to amend to include an antitrust counterclaim. The District Court held that the decision of an executive committee granting Louisville NECA $20,000.00 in past dues and service charges was binding on the parties. For the reasons stated below, we hold that the decision of the NECA Executive Committee is not binding on Lord. We further hold that Lord is not obligated to pay dues and a service charge to Louisville NECA and we reverse the District Court's order denying Lord's motion for summary judgment.
 
 
 2
 The Louisville Chapter National Electrical Contractors Association is a recognized chapter of the National Electrical Contractors Association ("NECA"), an incorporated trade association consisting of members who are engaged in the business of performing electrical construction work. NECA is organized under a national Constitution and ByLaws which govern all of its members. Lord Electric Company, the appellee and cross-appellant, is a corporation engaged in electrical contract work. Its headquarters are in New York. From 1901 to 1983, Lord was a member of NECA. As a member, it was obligated to pay dues and/or service charges to NECA in accordance with the Bylaws.[1]
 
 
 3
 In 1978, Lord and Commonwealth Electric Company, a subsidiary of a Nebraska company, entered into a joint venture to bid on electrical work on the Marble Hill Nuclear Power Plant near Madison, Indiana. The Marble Hill plant is within Louisville NECA's jurisdiction. The joint venture, doing business under the name Commonwealth Lord, was awarded a contract for the work. The NECA By-Laws provide that a NECA member who does not have a permanent office within the jurisdiction in which it is performing electrical work is required to pay service charges to the local chapter of up to one percent of the electrical contract payroll. This obligation arises only when the local chapter has
 
 
 4
 granted or made available to the member temporary membership privileges, with timely notice to the National Association and to the Chapter of permanent membership ... and provided further that the benefits and services extended to temporary members, except their right to hold o ice in the Chapter, are in every way comparable and equal to those extended to permanent members.
 
 
 5
 By-Laws of NECA, Art. III, Sec. 23 (emphasis added). The By-Laws further provide that the local chapter must then remit to NECA two-tenths of the one percent submitted by the visiting NECA member. Id. at Art. IV, Sec.l(B).
 
 
 6
 Commonwealth Electric Company was not a member of NECA, but the NECA By-Laws apply the one percent service charge obligation to visiting NECA members who participate in joint ventures with non-NECA members. The By-Laws state:
 
 
 7
 if any one or more offices of a member or members of this Association is engaged in a joint venture with one or more offices of another member or with one or more non-members of this Association then each office of each member of this Association who is such a joint venturer shall be jointly and severally responsible to the Association for payment of dues and service charge with respect to all work executed by such joint venture ... provided that the Executive Committee may make in any individual case a special ruling with respect to dues and service charge of joint ventures of members of this Association with non-members of this Association.
 
 
 8
 By-Laws of NECA, Art. IV, Sec.2. A joint venture is defined as a contractual arrangement existing for the purpose of furnishing part of the job financing or part of the bonding capacity, execution of part of the job requirements, or sharing in the financial results of the job. Id. at Sec.2(a). Commonwealth Lord clearly qualifies as a joint venture between a member and a non-member, because Lord was responsible for part of the bonding capacity, was responsible for execution of part of the job requirements, and was to share in the financial rewards of the job.
 
 
 9
 Soon after the joint venture was awarded the contract in Indiana, the chapter manager of Louisville NECA contacted Commonwealth Lord to collect its one percent contribution.[2] Louisville NECA allegedly provided certain services to the joint venture, specifically meeting with members of the joint venture, negotiating a bargaining agreement, assisting in an arbitration case, and discussing job training for various employees. In addition, Louisville NECA gave notice of the alleged temporary membership to the permanent chapter of Lord's Chicago office. Lord, however, refused to pay to Louisville NECA one percent of its payroll. In 1983, the vice president of Lord requested a special ruling by the Executive Committee of NECA to exempt the Marble Hill plant project from the service charges and dues. The Executive Committee found that Lord was obligated to pay dues, but ruled that Lord owed $20,000.00 instead of the $87,154.41 requested by Louisville NECA. Lord continued to refuse to pay the dues and terminated its NECA membership in June of 1983.
 
 
 10
 Louisville NECA filed suit in the District Court for the Western District of Kentucky to recover the dues and service charges it alleged were owed by Lord. Lord filed a motion to dismiss, but its motion was denied. On April 3, 1985, Louisville NECA filed a motion for summary judgment. On April 29, Lord fUed a cross-motion for summary judgment, with a request that the District Court allow Lord to amend its answer to include an antitrust counterclaim. It claimed that it had not been granted temporary membership privileges in accordance with the NECA By-Laws because the Louisville Chapter's By-Laws provided that "[t]emporary members shall not be eligible to participate in the election of Chapter officers either by voting or accepting nomination for office, nor shall they be eligible to vote on matters pertaining to labor agreement negotiations." Louisville Chapter By-Laws, Art. IV, Sec.3. The District Court granted Louisville NECA's motion in part, holding that Louisville NECA was entitled to recover $20,000.00, and dismissed its second count seeking dues through 1990. The court denied both Lord's cross-motion for summary judgment and its motion to amend. On February 4, 1986, Lord fUed a motion to alter judgment which was also denied. Both parties appeal the District Court's order.
 
 I.
 
 11
 The District Court held that the parties were bound by the Executive Committee ruling. It stated that "[u]nder the by-laws, disputes over dues owed by a member of a joint venture should be resolved by the executive committee and the parties are bound by the decision of the executive committee." District Court Opinion at 11. Lord claims on appeal that the decision of the NECA Executive Committee is not binding on the parties and that the District Court erred in failing to grant Lord's motion for summary judgment. Louisville NECA argues that the District Court's decision finding Lord liable for dues should be affirmed, but that Lord, by refusing to abide by the committee's decision, has waived its right to claim that the Executive Committee's limit on the extent of its liability is binding. Louisville NECA thus alleges that Lord is obligated to pay the full amount claimed rather than the amount specified by the committee.
 
 
 12
 The Executive Committee decision is not an arbitration award and we find that the District Court erred in granting Louisville NECA's motion for summary judgment on the basis of the committee's ruling. There is nothing in the NECA Constitution or By-Laws to support the court's conclusion that an Executive Committee decision is binding. The NECA By-Laws provide that "the Executive Committee may make in any individual case a special ruling with respect to dues and service charge of joint ventures of members of this Association with non-members of this Association." NECA ByLaws, Art. IV, Sec.2. The By-Laws do not provide that an appeal to the Executive Committee is an agreement to arbitrate or that a ruling by the committee regarding dues is binding on the parties. There is no basis for finding that Lord is bound by the decision.
 
 II.
 
 13
 Louisville NECA claims that Lord breached its contract with NECA by refusing to pay service charges and dues in the amount of one percent of its payroll. Lord argues that it was not obligated to pay the charges because Louisville NECA did not grant temporary membership privileges in accordance with the national By-Laws. In particular, Lord alleged that it was denied the right to vote for officers and the right to vote on issues relating to labor agreements. The District Court did not consider whether Lord breached the agreement by refusing to pay the dues. Instead, the court considered the ruling of the Executive Committee to be binding and granted summary judgment for Louisville NECA on that ground. Because we hold that the Executive Committee ruling is not binding, we must address whether Louisville NECA provided temporary membership to Lord such that Lord was obligated to pay dues and service charges to the local chapter.
 
 
 14
 Lord and Louisville NECA agree that Lord was not granted the right to vote for officers or to vote on labor negotiation issues. Louisville NECA claims, however, that Lord was not denied any rights or privileges to which it was entitled as a temporary member. Although its By-Laws provide that a temporary member may not vote in elections or on issues regarding labor agreements, Louisville NECA argues that it provided Lord temporary membership in accordance with NECA rules. In its response to Lord's cross-motion for summary judgment, Louisville NECA asserted that NECA does not recognize these rights as rights of temporary members and it cited a document entitled the Chapter Organization Guide. See Joint Appendix at 148. This guide does state that "[t]he only distinction between temporary and permanent members is that temporary members do not have the right to hold office, vote in elections for chapter offices, or vote on labor negotiation matters." Id. The document was introduced as an attachment to Louisville NECA's memorandum in support of its motion for summary judgment. It was not, however, accompanied by an affidavit or otherwise authenticated. It is therefore not properly before this Court. See Fed. R. Civ. P. 56.
 
 
 15
 On the basis of the record before us, we find that Louisville NECA did not grant to Lord temporary membership in accordance with the national NECA By-Laws. The By-Laws require a visiting member to pay dues only when the local chapter provides "benefits and services," excluding the right to hold office, which are "in every way comparable and equal to those extended to permanent members." By-Laws of NECA, Art. III, Sec.23. Louisville NECA suggests that the right to vote is not a benefit or service. NECA apparently does consider the right to participate in the organization a benefit or service, however, because it establishes the right to hold office as an exception to the benefits and services provided. There would be no need to specify this particular exception if NECA did not initially consider the right to hold office a benefit or service. The benefits and services provided to a temporary member by a local chapter must be in every way comparable and equal to those received by permanent members to trigger the obligation on the part of a temporary member to pay dues. Louisville NECA failed to comply with the national By-Laws when it refused to grant Lord the right to vote in elections and to vote on issues relating to labor agreements. Because Louisville NECA did not provide comparable and equal benefits and services, we hold that Lord is not obligated to pay dues and service charges to the local chapter.
 
 III.
 
 16
 Lord finally claims that Louisville NECA's attempt to impose a one percent charge on a joint venture between a member and a non-member is motivated by a desire to assist the competing electrical contractors in its jurisdiction. Thus, Lord argues that Louisville NECA is violating the antitrust laws by pursuing bad-faith litigation to secure a result prohibited by the antitrust laws and it claims that it is entitled to treble damages. Lord implies that the imposition of a charge based on the payroll of the joint venture is simply an alternative method of enforcing the NEIF contribution that was declared illegal in National Constr. Ass'n v. National Elec. Contractors Ass'n, Inc., 498 F. Supp. 510 (D. Md. 1980) aff'd, 678 F.2d 492 (4th Cir. 1982), cert. dismissed, 463 U.S. 1234 (1983). The injunction entered in that case prohibited NECA from enforcing the NEIF against non-members and stated that NECA must not attempt to collect "any alternate or substitute" for the NEIF. The District Court found that the agreement that required contractors using union labor, members and non-members alike, to contribute one percent of its payroll to the NEIF was a per se violation of the antitrust laws. In the case before us, however, Louisville NECA is not imposing dues or a service charge on a non-member. Cf., T.W. Elec. Serv., Inc. v. Pacific Elec. Contract Ass'n, No. 86-1646 (9th Cir. Feb. 5, 1987) (distinguishing an agreement requiring signatories to contribute a fund from the agreement in National Constr. Ass'n). Although the dues are calculated on the basis of the payroll of the joint venture, Lord is responsible for the charges. By consenting to abide by the NECA Constitution and By-Laws, Lord agreed to pay dues and a service charge to the local chapter of any jurisdiction in which it performed contracting work. Lord voluntarily committed itself to paying for the services of the local chapter as long as the local chapter complied with the requirements for providing temporary membership. It cannot now claim that NECA is imposing the obligation in bad faith or in violation of the antitrust laws. We affirm the District Court's denial of Lord's motion to amend in order to include an antitrust counterclaim.
 
 IV.
 
 17
 In conclusion, we find that the decision of the national NECA Executive Committee is not binding on Lord. We further find that Louisville NECA did not grant to Lord temporary membership in accordance with the national NECA By-Laws and we therefore hold that Lord is not obligated to pay dues and a service charge to the local chapter. We reverse the District Court's order denying Lord's motion for summary judgment, and remand the case for entry of judgment in favor of Lord. We affirm the District Court's denial of Lord's motion to amend.
 
 
 
 [1]
 The NECA Constitution provides in part that "[a]11 activities of the Association shall be ... financed by the dues and/or a service charge payable by members as fixed by the By-Laws on the same basis for all members." Constitution of NECA, Art. IV
 
 
 [2]
 At that time the contribution would have been made to the National Electrical Industry Fund ("NEIF"). The NEIF was formed pursuant to an agreement between the International Brotherhood of Electrical Workers and NECA that attempted to impose a one percent contribution on all electrical contractors using union labor, whether the contractors were NECA members or not. The provision was enjoined as a violation of antitrust laws in National Elec. Contractors Ass'n., Inc. v. National Constr. Ass'n, 678 F.2d 492, 496-97 (4th Cir. 1982), cert. dismissed, 463 U.S. 1234 (1983)